[No. 1994]

THE STATE OF NEVADA, EX REL. GEORGE T. MILLS, AS CHAIRMAN OF THE BOARD OF FISH COMMISSIONERS, RELATOR, v. WILLIAM McMILLAN, AS STATE TREASURER OF THE STATE OF NEVADA, RESPONDENT.

1. STATES—GENERAL FUNDS.
   All moneys coming into the state treasury constitute a part of the general fund, unless the placing thereof in a special fund is specifically authorized by the constitution or a statute.

2. STATES—GENERAL FUNDS—TRANSFER TO SPECIAL FUNDS.
   Neither the act of March 20, 1909 (Stats. 1908-09, c. 131), sec. 7, an act for construction of a state prison, providing that for the purpose of carrying out the act $100,000 is appropriated out of the general fund in the state treasury, to be transferred to the state prison building fund, on warrants drawn by the state controller after all claims and demands therefor have been audited and allowed by the state board of prison commissioners and the state board of examiners, nor the act of March 23, 1909 (Stats. 1908-09, c. 153), sec. 1, an act for a state loan, appropriating the sum of $105,000 for the purpose of enabling the state board of prison commissioners to carry out the provisions of said prior act, authorizes the transfer of any money from the general fund of the state into the state prison building fund, in excess of claims audited and allowed by said boards of prison commissioners and examiners; so that an attempted transfer in excess thereof is void.

ORIGINAL PROCEEDING. *Mandamus*, by the State, on the relation of George T. Mills, as Chairman of the Board of Fish Commissioners, against William McMillan, as State Treasurer of the State of Nevada. **Writ granted.**

*Cleveland H. Baker*, Attorney-General, and *James R. Judge*, Deputy Attorney-General, for Relator.

*James T. Boyd, amicus curiæ.*

*Per Curiam:*

This is an action in *mandamus* instituted by relator, George T. Mills, as chairman of the state board of fish commissioners, seeking to compel William McMillan, as state treasurer of the State of Nevada, to pay a warrant for the sum of $1,755.36 issued by the state controller on the general fund of the state, and to further compel the state treasurer to transfer from the fund designated and known as the "New State Prison Building Fund" the money therein contained, amounting to the sum of $73,945.80, into the general fund of the state treasury, so that there will be money in the general fund out of which said claim of relator can be paid. From the petition it appears that the governor of the State of Nevada, pursuant to an act of the legislature approved March 16, 1905 (Stats. 1905, c. 156), appointed a fish commission of which the relator is chairman; that, pursuant to the said act of the legislature, it was made the duty of the said fish commission, when appointed, to at once construct upon state property at Verdi, Nevada, suitable buildings for a fish hatchery, etc., and for this purpose the legislature appropriated out of the general fund of the state the sum of $8,000, to be expended under the direction of said fish commission; that, pursuant to said act of the legislature, said fish commission contracted among other debts for the construction of said buildings at Verdi, Nevada, a debt in the amount of $1,755.36, which was regularly allowed by the fish commission and approved by the board of examiners, for which amount the warrant in controversy was regularly drawn on the general fund of the state treasury; that the state treasurer refused to pay said warrant of the state controller out of said fund for the amount designated, notwithstanding there was an unexpended balance in said appropriation of March 10, 1911, of the sum of $7,235.73; and that the said state treasurer refused to pay said warrant because there was no money whatever left in the general fund, and indorsed on said warrant, which he refused to pay, "Not paid for want of funds." The petitioner further relates

that on the date of the presentation of said warrant for payment to the state treasurer, there remained in said state treasury in a fund designated on the books of the said state controller and state treasurer as the "New State Prison Building Fund," in current money of the government of the United States of America, an unexpended balance of $73,945.80, which said sum of money has been lying idle in said fund for more than seventeen months last past, and the state paying interest thereon for said money.

It further appears in said petition that a meeting of the state board of prison commissioners of the State of Nevada was held on the 28th day of August, 1911, said meeting being called for the purpose of considering the advisability of authorizing and directing the state treasurer of the State of Nevada to transfer said sum of $73,945.80 from the new state prison building fund into the general fund in the state treasury; that at said meeting by a majority vote of said board, it being so deemed advisable and necessary, said board of state prison commissioners did direct and authorize the transfer of said sum of $73,945.80 from said new state prison building fund into the general fund; and that upon the same day the state board of examiners at a meeting duly called and held at the office of said board in the capitol building, in Carson City, Nevada, after considering the action taken by the said board of state prison commissioners with reference to authorizing and directing the transfer of said sum from the new state prison building fund to the general fund, said board of examiners did then and there, by a majority vote of said board by resolution, approve of and ratify the action taken by said board of state prison commissioners in transferring said sum of $73,945.80 from the said new state prison building fund into the general fund in the state treasury. The petitioner further relates that the respondent, the state treasurer, refused to make said transfer of said $73,945.80 from the new state prison building fund into the general fund in the state treasury, as by said board of state prison commissioners and board

of examiners authorized and directed to do, and for that reason the general fund is without money to meet the payment of the warrant of said relator for the sum of $1,755.36, which is a valid claim against the state, and which has been regularly approved and allowed, and was regularly presented to and refused payment by the said state treasurer. The respondent appeared at the hearing, and admitted all the facts alleged in the petition, and the only question presented is one of law as to whether there is or should be sufficient money in the general fund of the state treasury to pay the claim in question.

Two questions of law are presented by relator's petition: First, as to whether the sum of $73,945.80, now standing upon the books of the state treasurer and state controller in a fund designated "New State Prison Building Fund," was ever placed in said fund by authority of law; and, second, if so legally placed in said fund, whether the same has been transferred from the said new state prison building fund to the general fund by resolution adopted by the state board of prison commissioners and the state board of examiners. It has been contended by the attorney-general in the argument upon the proceeding that the said sum of $73,945.80 has at all times been, and is now, a part of the general fund, and that the action of the state controller and state treasurer in placing such money in the said fund designated "New State Prison Building Fund," was without authority of law and their actions to that extent void, and, further, if their action was not void, then the said moneys in said special fund have been transferred by the resolutions of the board of prison commissioners and board of examiners. If the first contention of the attorney-general is correct, it will be unnecessary to consider the question as to whether power existed in the board of prison commissioners and board of examiners to make a transfer of said funds. Upon the hearing of the proceedings, James T. Boyd, Esq., appeared upon behalf of the Nevada Engineering Works, a corporation, claiming to have a contract with the state board of prison commissioners for supplying a certain

number of steel cells for the new state prison, and he
was permitted to make an argument in opposition to the
granting of the writ prayed for. It was the contention
of Mr. Boyd that the money now standing upon the books
of the state controller and state treasurer in the fund
designated "New State Prison Building Fund" was a
special fund dedicated by the state legislature for the
sole purpose of paying claims for expenses in the con-
struction and furnishing a new state prison under acts of
the legislature hereafter mentioned, and that there was
no authority of law by which any board or officer could
transfer said money into the general fund.

Preliminary to a consideration of the statutes con-
trolling the questions submitted, it may be stated as a
general proposition of law that all moneys coming into
the state treasury constitute a part of the general fund,
unless by the provisions of the constitution or some stat-
utory enactment they are placed in some special fund.
It follows, therefore, that the money in question, to wit,
$73,945.80, belongs in the general fund, unless there is
some provision of law specifically authorizing its place-
ment in a special fund. The only provisions of law
affecting the question involved are statutory and found
in two certain acts of the legislature of the session of 1909.

By an act approved March 20, 1909, entitled "An act
authorizing and requiring the state board of prison com-
missioners, under certain conditions, to acquire a site and
premises for a state prison, fixing its locality, defining its
nature, area, certain appurtenances and general character,
and, upon the approval by said board of plans, specifica-
tions, and detailed drawings of the state engineer there-
for, who is made the architect and superintendent thereof,
to erect and construct upon said site and premises, wholly
or in part, by contract or otherwise, said state prison,
prescribing certain duties for the said board and the
state engineer under this act, and declaring said state
prison, when erected and constructed, and accepted by
the said board to be the state prison of the State of
Nevada, and for all courts thereof to take judicial notice

of the same, and enter its decrees and sentences accordingly, and authorizing removal thereto, and appropriating certain moneys for carrying out the provisions of this act, and other matters relating thereto," provision was made for the purchase of a site for a new state prison and authorizing and directing the board of prison commissioners to construct a new state prison thereon. (Stats. 1908–09, c. 131.) Section 7 thereof provides as follows: "For the purpose of carrying out all and singular the provisions of this act, the sum of one hundred thousand dollars ($100,000) is hereby appropriated out of any moneys in the general fund in the state treasury not now otherwise specifically appropriated, the same to be transferred to the state prison building fund, the same to be transferred upon warrants drawn by the state controller after all claims and demands therefor have been duly audited and allowed by the state board of prison commissioners and the state board of examiners."

By an act approved March 23, 1909, entitled "An act providing for a state loan and its repayment by issuing certain bonds therefor, levying a certain *ad valorem* tax, and other matters relating thereto" (Stats. 1908–09, c. 153), it was provided in section 1 as follows: "The sum of one hundred and five thousand (105,000) dollars is hereby appropriated for the purpose of aiding and enabling the state board of prison commissioners to carry out the provisions of that certain act of the legislature of this state, authorizing and directing said board to acquire a suitable site and premises for, and to erect and construct thereon, a state prison." The other provisions of the later act provided for the borrowing from the state school fund and from certain university land-grant funds the sum of $105,000, to be secured by state bonds issued therefor and by the levy of a special tax to pay said bonds and accrued interest within a period of twenty years. If authority existed upon the part of the state controller and state treasurer to transfer any money appropriated under the provisions of the two acts above mentioned, such authority must be

found in section 7 of the act of March 20th, and section 1 the act of March 23d, *supra.*

It is conceded that no money has ever been paid out of the state treasury under and by virtue of the provisions of the said act of March 20th, except the sum of $910.35, but that there has been paid out of money appropriated under the act of March 23d, *supra*, the difference between $73,945.80 and the total appropriation of said act of $105,000. Neither in the title of the act of March 23d nor in section 1 thereof is there any special provision that the money so appropriated is appropriated otherwise than out of the general fund. Section 1 states the purpose for which the $105,000 is appropriated to be that of enabling the state board of prison commissioners to carry out the provisions of the said act of March 20th, *supra.* Hence, if authority exists to transfer the said appropriation of $105,000 into the "State Prison Building Fund," mentioned in section 7 of the act of March 20th, *supra*, it must be found in the provisions of section 7. This section provides for the transfer of the appropriation made by the act of March 20th from the general fund into the state prison building fund to be made in the special manner prescribed by section 7 of the act as follows: "The same to be transferred upon warrants drawn by the state controller after all claims and demands therefor have been duly audited and allowed by the state board of prison commissioners and the state board of examiners."

The authority, therefore, of the state controller and the state treasurer to transfer any moneys from the general fund into the state prison building fund rests upon the prior action of the state board of prison commissioners and the state board of examiners. It is conceded that the only claims against the funds appropriated by either the act of March 20th or the act of March 23d, *supra*, which have been audited and allowed by the state board of prison commissioners and the state board of examiners, aggregate the sum of $31,054.20. Conceding, then, for the purpose of this case, that the appropriation made by section 1 of the act of March 23d, *supra*, is governed by

the provisions of section 7 of the act of March 20th, *supra*, then the only authorization of the state controller and state treasurer to make any transfer of money from the general fund to the state prison building fund would not exceed, up to the present time, an amount in excess of $31,054.20. The provisions of section 7 of the act of March 20th, *supra*, are somewhat peculiar, but the language is plain and the intent of the legislature clearly deducible therefrom.

The legislature clearly manifested an intention not to take out of the general fund and segregate in a special fund large sums of money before the time would arrive for the use of the same and thus possibly cripple the general fund to the disadvantage of persons having claims against the same, as justly and legally entitled to be paid as claims for the construction and equipment of the proposed new state prison; hence the provision was specifically made for the transfer of money from the general fund into the special state prison building fund only "after all claims and demands therefor have been duly audited and allowed by the state board of prison commissioners and the state board of examiners." It follows from the only construction that can be legitimately placed upon provisions of the acts of March 20th and March 23d, *supra*, that the state controller and state treasurer were without lawful authority to transfer the total appropriation made by the act of March 23, 1909, into the state prison building fund mentioned in section 7 of the act of March 20th, or into the fund designated by the state controller and state treasurer as the "New State Prison Building Fund," and hence such acts of transfer by the state controller and state treasurer were without authority and void, and it follows then that all of said money is now and has been since the passage of the act of March 23, 1909, a part of the general fund.

It is unnecessary therefore to consider the question presented as to the power of the board of prison commissioners or the board of examiners to order and transfer the money in question to the general fund, for said money

is already a part of the general fund, and it is the duty
of the state controller and state treasurer to make such
entry upon their books as will show said money to be in
the general fund. While we have spoken of the con-
struction to be placed on section 7, *supra*, it would be
more proper to say that the language of the section is
plain and unambiguous and hence there is no room for
construction; that the meaning thereof is clear and in
accordance with the construction above expressed. No
rights of the Nevada Engineering Works upon any con-
tract they may have with the state board of prison com-
missioners can be affected by this decision. Any legiti-
mate claim which they may in the future have upon the
state treasury will have to be paid in accordance with
law. The legislature doubtless considered that when any
claims for prison construction or equipment should be
presented for payment there would be money sufficient
in the general fund to be transferred into the state prison
building fund to meet such claims, and it is manifest from
the two acts referred to that it was the intention of the
legislature to so augment the general fund as to meet
such conditions when the same should arise.

If it should develop in the future that the legislature
had underestimated the amount of money that should
come into the general fund so that there should not be a
sufficient amount to immediately pay claims out of the
state prison building fund upon the presentation thereof,
other general provisions of the statute make ample pro-
vision for the payment of such claims, as well as other
claims generally.

Section 1994 of the Compiled Laws provides: "The
state treasurer shall pay all warrants drawn upon him by
the state controller, out of the proper fund, as directed,
in the order in which the same are presented. If there
be no money to pay any warrant when presented, the state
treasurer shall indorse thereon the words: 'Not paid for
want of funds,' and shall note the date of presentation,
and attest the indorsement by his official signature. He
shall at the same time make an entry of the date of pres-

entation, number, and amount of the warrant in the register required by law to be kept by him. So soon as money accumulates or is received into the state treasury, applicable to and sufficient for the payment of any outstanding warrant or warrants so presented for payment and not paid for want of funds, the state treasurer shall post a notice in writing in a conspicuous place in his office, setting forth the number and amount of his warrant or warrants, and the fact that there is money in the state treasury to pay the same. From the time of the posting of such notice no interest shall be allowed or paid upon any warrant which by law is or may be entitled to bear interest."

It would appear from the provisions of the foregoing section that claims "not paid for want of funds" have a preferred right of payment over subsequent claims, and that they must be paid out of the first moneys coming into the treasury available therefor, and it would further seem that they not only have such preference, but that they are entitled to legal interest of 7 per cent per annum from the date of presentation until such time as money is available for their payment. There is nothing in the provisions of the statute in the two acts mentioned which manifest any intent upon the part of the legislature to throw any halo of sacredness over claims for building the new state prison or equipment of same superior to that of other legitimate claims, such as for salaries of state officers or the maintenance of state institutions, such as the hospital for mental diseases, orphans' home, or state prison.

Certain funds, like that of the state school fund, have special constitutional provisions which dedicate the same for a special purpose and expressly prohibit their use for any other purpose, but no such sacredness is, by statute or otherwise, thrown around the claims for contracts or equipment of a new state prison.

At the time these acts were passed the state prison and the state treasury were both overflowing. After two years these conditions are changed. The number of

inmates in the state prison is diminished, the same necessity for a larger one does not now exist, and it is not apparent that any effort is now being made to build a new one, or that the money may not long lie idle, or will be needed for this purpose soon, or before the general fund will be replenished by the payment of taxes sufficient to meet obligations against it or which may accrue for the building or equipment of a new prison.   The state school fund possesses millions in cash and interest-drawing bonds of eastern states, but the constitution prevents transfers from that fund, and from that fund only. Under these circumstances, and with the money sought to be transferred having lain for over a year in a fund not specified by the legislature, and it being the rule that, when no other fund is designated for the placement of moneys, they go into the general fund, good business policy as well as the law warrants the use of this money, on which the state has long been paying interest, to meet any obligations of the state properly payable out of the general fund, and to aid in maintaining the good credit of the state until the receipt of the main installment of taxes due and payable in about ninety days.

By reason of the foregoing, it is ordered that the state treasurer of Nevada, the respondent herein, forthwith pay the presented warrant of relator out of said sum of $73,945.80, which said sum is now in the general fund and has been at all times since its receipt by the state treasurer, notwithstanding the illegal and void transfer of said sum into what is known as the "New State Prison Building Fund."